UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE CHILDRESS, JR.,

                Petitioner,                  Case Number 12-14511
                                            Honorable George Caram Steeh

RAYMOND BOOKER,

                Respondent.
_____/

**AMENDED OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Robert Childress's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted in the Macomb Circuit Court after a bench trial of larceny by false pretenses of $20,000 or more but less than $50,000, MICH. COMP. LAWS § 750.218(5)(a). Petitioner was sentenced as a fourth-offense habitual offender, MICH. COMP. LAWS § 769.12, to a sentence of 19-to-120 months. The petition raises nine grounds for relief: (1) Petitioner was denied his right to a speedy trial where it took twenty-two months for the trial to be held; (2) Petitioner was denied his right to substitute counsel; (3) Petitioner was denied the effective assistance of trial counsel; (4) Petitioner was denied his right to confrontation because none of the prosecutor's witnesses had any personal knowledge that Petitioner committed a crime; (5)The prosecutor improperly withheld exculpatory evidence about the vehicles involved in the crime until the day of trial; (6) the trial court did not comply with the requirements for waiver of counsel; (7) Petitioner's jail credit was improperly calculated; (8) there was

-1-

insufficient evidence to convict Petitioner; and (9) Petitioner was imprisoned for a debt founded upon a legal contract that he was not obligated to repay because it was in someone else's name. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied.  The Court will grant Petitioner a certificate of appealability with respect to his sixth claim, but deny one with respect to his other claims. The Court will grant Petitioner permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's conviction arises from his involvement in a scheme in Macomb County in which he persuaded his girlfriend, Tomeka Gilmore, to purchase or lease several motor vehicles in financed transactions, and then traded in one of the vehicles for consideration after obtaining a replacement certificate of title that falsely indicated that there was no security interest on the vehicle. Although all purchase agreements, lease agreements, and financing contracts were in Gilmore's name, defendant conducted all of the negotiations and handled all of the transactions, and he took possession of the vehicles. Gilmore testified that she agreed to help defendant acquire the vehicles because she trusted defendant, believed that he needed the vehicles for his "leasing company," and he told her that he would make all of the lease and installment payments.

> One of the purchased vehicles, a Land Rover, was financed by Capital One Finance ("Capital One"). After a certificate of title was issued that listed Capital One as a secured creditor, a replacement certificate of title was obtained that listed Gilmore as the owner of the vehicle, but did not list Capital One's lien. Evidence indicated that the Secretary of State issued the replacement certificate of title after it was presented with (1) a form, with Gilmore's signature, authorizing a "Terence Jones" to conduct business pertaining to the Land Rover on her behalf, and (2) a separate document indicating that the Capital One lien had been satisfied. Gilmore denied knowledge of either document, denied knowing anyone named Terence Jones, and claimed that the signature on the authorization form was not hers. Defendant later used the false certificate of title to negotiate a trade-in of the

Land Rover in exchange for a prepaid lease of a Ford Fusion from Russ Milne Ford, and a cash difference of approximately $20,000. Russ Milne Ford issued the check payable to Gilmore, but Gilmore gave the proceeds to defendant when she cashed the check.

Gilmore was not charged with any crimes and testified for the prosecution at trial. The prosecution's theory at trial was that defendant used Gilmore, an unsuspecting dupe, to commit acts of fraud.[1] The defense theory at trial was that any act of fraud was committed by Gilmore, who was the listed owner of the Land Rover, the listed owner of the Ford Fusion, and the debtor to Capital One.

_____

[1] In 2008, defendant was convicted of larceny by conversion of property, MCL 750.362, and making a false assignment of a motor vehicle title, MCL 257.254, for his involvement in a similar scheme with a different girlfriend in Oakland County. This Court affirmed defendant's convictions in that case. People v. Childress, unpublished opinion per curiam of the Court of Appeals, issued June 28, 2011 (Docket No. 288657).

People v. Childress, No. 299592, 2012 WL 1890181, at *1-2, (Mich. Ct. App. May 22, 2012).

Following his conviction and sentence based on this evidence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appointed appellate counsel filed a brief raising the following claims:

I. The prosecutor did not make a good-faith effort to bring Defendant to trial within 180 days according to Michigan law.

II. Defendant's conviction was based upon insufficient evidence.

Petitioner also filed his own supplemental pro se brief which raised the following additional claims:

I. The prosecutor did not bring Defendant to trial within 180 days as required by Michigan law.

II. Defendant's right to a speedy trial was violated by inordinate pre-trial delay. This prejudiced Defendant from having a fair trial due to witness loss, distorted and faded memories which would have been favorable to the

-3-

defense.

III. Defendant was denied his right to counsel of choice when it denied an adjournment of the trial for a reasonable amount of time so retained counsel could be obtained.

IV. Defendant was denied the effective assistance of trial counsel.

V. Defendant was denied his right to confrontation when he was accused of a crime without a complaint or affidavits from eyewitnesses who could be cross-examined in a court of law.

VI. The prosecutor improperly suppressed information about Terrence Jones and his criminal history and about a deal with Tomeka Gilmore not to prosecute if she cooperated.

VII. The trial court improperly allowed Defendant to represent himself at trial without complying with the requirements to determine if he waived his right to counsel.

VIII. The trial court improperly denied Defendant jail credit from the time his parole was terminated.

IX. The court erred in ordering Defendant to pay restitution without sufficient factual basis to find Defendant was financially responsible and Capital One was not present at trial or the restitution hearing.

X. There was insufficient evidence to convict.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. People v. Childress, No. 299592, 2012 WL 1890181, at *1, (Mich. Ct. App. May 22, 2012). The Michigan Supreme Court subsequently denied Petitioner leave to appeal this decision, finding that the issues presented did not merit review. People v. Childress, 493 Mich. 858 (2012) (table ).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas

corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. "[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id., at 786-787.

-6-

### III. Analysis

**A. Speedy Trial**

Petitioner's first claim asserts that his Sixth Amendment right to a speedy trial was violated. The Michigan Court of Appeals found that review of the claim was barred because Petitioner had not objected to the delay of his trial on these grounds prior to trial. Respondent asserts that the claim is barred from review and meritless.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI; see also Klopfer v. North Carolina, 386 U.S. 213 (1967) (holding that the right to a speedy trial is incorporated through the Fourteenth Amendment and thus applies to the states). The Supreme Court in Barker v. Wingo, 407 U.S. 514, 530 (1972), established a four-factor test for evaluating a Sixth Amendment speedy-trial claim: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. None of these four factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id. at 533. Applying these factors here shows that Petitioner's speedy-trial rights were not violated.

**1. Length of the delay**

Petitioner was tried in April 2010, twenty-two months after he was charged in June of 2008. The length of the delay is a threshold factor for any Sixth Amendment speedy trial claim. United States v. Watford, 468 F.3d 891, 901 (6th Cir. 2006). "That is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other

factors." United States v. Gardner, 488 F.3d 700, 719 (6th Cir. 2007); see also Doggett v. United States, 505 U.S. 647, 651-52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."). Thus, this Court must determine, at the outset, whether the delay here was "uncommonly long" or "extraordinary." Watford, 468 F.3d at 901 (citations omitted).

Generally, a delay is presumed prejudicial and deemed sufficient to require further analysis when it exceeds one year. Id. Furthermore, the longer the delay "stretches beyond the bare minimum needed to trigger judicial examination of the claim," the stronger the presumption of prejudice to the defendant from the pretrial delay. Doggett, 505 U.S. at 652. The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier. United States v. Marion, 404 U.S. 307, 320 (1971); Maples v. Stegall, 427 F.3d 1020, 1026 (6th Cir. 2005).

Because the delay in Petitioner's case was more than year, it necessary for the Court to examine the other factors.

### 2. Reasons for the delay

In considering the reasons for delay, this Court must consider the justifications offered by the government, as "only those periods of delay attributable to the government or the court are relevant to [defendant's] constitutional claim." United States v. Howard, 218 F.3d 556, 564 (6th Cir. 2000). In Barker, the Supreme Court established a sliding scale of justifications for delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but

-8-

> nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531 (footnote omitted); see also Maples, 427 F.3d at 1026 ("In considering this factor, we weigh some reasons more heavily than others. For instance, government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while 'more neutral' reasons such as negligence or overcrowded dockets weigh against the state less heavily."). "The purpose of this weighting scheme is to quantify 'whether the government or the criminal defendant is more to blame for [the] delay.'" Watford, 468 F.3d at 902.

Here, the state record shows that the delays in Petitioner's trial were caused by his repeated requests to adjourn the preliminary examination, his requests for extensions of time to file a motion to quash, his two requests for the substitute counsel, and his new counsel's request for time to become familiar with Petitioner's case. The record does not indicate that any substantial portion of the delay was caused by the prosecutor. Therefore, this factor weighs heavily in favor of Respondent

### 3. Assertion of his Sixth Amendment right

The Court has found no indication in the state court record that Petitioner ever asserted his right to a speedy trial under the Sixth Amendment prior to trial. It appears that the first time he asserted this right was in his pro se supplemental brief during his appeal of right. Accordingly, this factor also weighs in favor of Respondent.

### 4. Prejudice

In considering the final Barker prong, prejudice to Petitioner from the delay, the

Court "must heed the Supreme Court's instruction to consider the possible prejudice suffered by the defendant in light of the interests safeguarded by the Sixth Amendment's speedy trial guarantee." Watford, 468 F.3d at 907 (citations omitted). "Three interests are paramount: (I) preventing oppressive pretrial incarceration; (ii) minimizing the anxiety and concern of the accused; and (iii) limiting the possibility that the defense will be impaired." Id. (citations omitted). The third factor, impairment of the defense, is the most important "'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" Id. (quoting Barker, 407 U.S. at 532 and Schreane, 331 F.3d at 557-58).

Petitioner does not point to any evidence of prejudice relating to the "paramount interests" of the Sixth Amendment. He fails to argue that he suffered any oppressive pretrial incarceration. Furthermore, Petitioner does not argue that he suffered any anxiety or concern during his pretrial delay or that his defense was impaired by the delay. Petitioner's failure to allege prejudice of any kind from the delay weighs heavily against him and in favor of the prosecutor.

Nor does Petitioner demonstrate that any delay prejudiced his defense. As noted by Respondent, the delay was frankly for his benefit because he asked for the adjournments. And, contrary to his assertions,  there is no indication that any evidence was lost or that any witnesses forgot anything of consequence because of the delay.

Accordingly, in balancing the Barker factors, any delay in bringing Petitioner to trial did not deprive him of his Sixth Amendment right to a speedy trial, and he has not demonstrated entitlement to habeas relief.

-10-

## B.  Substitute Counsel

Petitioner's second claim asserts that he was denied his right to counsel of his choice, when on the day of trial, the trial court denied his motion to appoint substitute counsel.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant in a criminal case the right to the assistance of counsel in his or her defense. Faretta v. California, 422 U.S. 806, 807 (1975). "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). "A choice-of-counsel violation occurs whenever the defendant's choice is wrongfully denied," id. at 150 (emphasis in original), but the right "is circumscribed in several important respects," id. at 144. A defendant may not demand that a court honor his or her waiver of conflict-free representation, and trial courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." Id. at 151-52 (citations omitted). Trial courts also have "an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" Id., at 152 (quoting Wheat v. United States, 486 U.S. 153, 160 (1988)).

When reviewing a trial court's denial of a motion to substitute counsel, courts consider four factors:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

-11-

United States v. Vasquez, 560 F.3d 461, 466 (6th Cir. 2009). If the defendant's motion would "necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." Id. at 467. Henness v. Bagley, 644 F.3d 308, 321 (6th Cir. 2011)

Here, determination by the Michigan Court of Appeals that the trial court properly denied Petitioner's third request for the appointment of substitute counsel did not result in an unreasonable application of the governing standard.  As correctly noted by the state appellate court, the request was made on the day of trial, and the trial date had already been substantially delayed because the court had previously adjourned several prior proceedings at defendant's requests. This fact alone compelled the state appellate court to give the trial court's decision extraordinary deference. The trial court had already appointed substitute counsel for Petitioner, and he had more than ample time before trial to retain new counsel. Finally, Petitioner's counsel had two months to prepare for trial, belying Petitioner's claim that he required new counsel because his attorney was unprepared. In fact, defense counsel informed the court that he was "ready" to proceed with trial, and nothing in the record shows that he was unprepared.

Accordingly, the state court adjudication of this claim did not result in an unreasonable application of the established standard.

## C.  Ineffective Assistance of Counsel

Petitioner asserts in his third claim that his counsel was ineffective at trial. Respondent asserts that the claim was reasonably adjudicated by the Michigan Court of Appeals.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received

ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. Id.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. Strickland, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. Id. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. Id. at 689.

To satisfy the prejudice prong under Strickland, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686.

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim as follows:

Defendant contends that he was denied the effective assistance of counsel

-13-

at trial. Because defendant did not raise an ineffective assistance of counsel claim in a motion for a new trial or request for an evidentiary hearing under People v. Ginther, 390 Mich. 436, 443 (1973), this Court's review of this issue is limited to mistakes apparent on the record. People v. Wilson, 242 Mich.App. 350, 352 (2000). To establish ineffective assistance of counsel, defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; (2) there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different; and (3) the resultant proceeding was fundamentally unfair or unreliable. People v. Mesik (On Reconsideration), 285 Mich.App. 535, 542-543 (2009).

Defendant contends that trial counsel was ineffective for failing to challenge his arrest as illegal and for failing to move to suppress illegally seized evidence. An illegal arrest does not divest a court of jurisdiction over the defendant. Porter v. Porter, 285 Mich. App. 450, 462 (2009). Similarly, "[t]he mere fact of an illegal arrest does not per se require the suppression of evidence." People v. Corr, 287 Mich App 499, 508 (2010). Only evidence recovered as a result of an illegal arrest need be suppressed. Porter, 285 Mich.App. at 462. In this case, defendant does not explain the legal bases for his assertions that his arrest was illegal or that evidence was unlawfully seized, nor does he identify the specific evidence that he believes was illegally seized. Defendant's failure to establish a factual predicate for his argument defeats this claim of ineffective assistance of counsel. People v. Hoag, 460 Mich. 1, 6 (1999).

Defendant also asserts that trial counsel failed to prepare for trial. "When making a claim of defense counsel's unpreparedness, a defendant is required to show prejudice resulting from this alleged lack of preparation." People v. Caballero, 184 Mich.App. 636, 640 (1990). The defendant "must show that his counsel's failure to prepare for trial resulted in counsel's ignorance of, and hence failure to present, valuable evidence that would have substantially benefited the defendant." People v. Bass (On Rehearing), 223 Mich.App. 241, 253 (1997), vacated in part on other grounds 457 Mich. 866 (1998). Although defendant contends that trial counsel should have investigated the existence of plea agreements between the prosecutor and prosecution witnesses, and should have investigated the witnesses criminal backgrounds, there is no indication in the record that any prosecution witness testified pursuant to a plea agreement or had a criminal record that could have been discovered and used at trial. Further, the record indicates that defense counsel explored the subject of a possible agreement with the prosecution in his cross-examination of Gilmore, asking whether any criminal charges were brought against her, or whether she had any discussions with the police or prosecutor in which she was told that charges would not be brought against her if she cooperated. She denied being charged with any

offense or having any such discussions. Without evidence that a plea agreement actually existed or that any witness had a relevant criminal history that could have been used at trial, defendant cannot establish this claim of ineffective assistance of counsel. <u>Hoag</u>, 460 Mich. at 6. <u>Id</u>. Defendant also argues that trial counsel failed to call res gestae witnesses, but, once again, he does not identify these witnesses or indicate what testimony they could have provided. Thus, this claim also cannot succeed.

Defendant also contends that counsel was ineffective for failing to challenge the complaint signed by Officer Michalke. Defendant argues that the complaint was invalid because it was not signed by an eyewitness or a police officer with personal knowledge of the crime and because it was not supported by an affidavit of a witness with personal knowledge. We find no merit to this issue. An examination of the complaint reveals that it complies with M.C.R. 6.101 and M.C.L. 764.1a. Neither the court rule nor the statute requires that the complaint be signed by an eyewitness or a person with personal knowledge. Rather, factual allegations in the complaint "may be based upon personal knowledge, information and belief, or both." M.C.L. 764.1a(3). Therefore, defense counsel was not ineffective for failing to bring a meritless motion challenging the validity of the complaint.

<u>Childress</u>, No. 299592, *7-8.

Considering the deferential standard of review for claims adjudicated on the merits in the state court, Petitioner has not demonstrated entitlement to habeas relief based on his ineffective assistance of counsel claims. As recently explained by the Supreme Court, <u>Strickland</u> establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of <u>Strickland</u>:

"Surmounting <u>Strickland's</u> high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. <u>Strickland</u>, 466 U.S., at 689-690. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and

with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689; see also Bell v. Cone, 535 U.S. 685, 702 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at 123. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 131 S. Ct. at 788.

The opinion of the Michigan Court of Appeals, at a minimum, presents a "reasonable argument" that Petitioner was not denied the effective assistance of counsel. The state appellate court recited the correct governing standard, and that it applied the standard in a reasonably manner to Petitioner's case based on the facts of record. Accordingly, the Court finds that the state court's adjudication of Petitioner's ineffective assistance of counsel claims was not contrary to, nor did it involve an unreasonable application of, the clearly established Supreme Court standard.

**D.  Denial of Right to Confrontation**

Petitioner's fourth claim asserts that his rights under the Confrontation Clause were violated because there was no "complaining witness" for him to cross-examine. This novel claim cannot be supported by clearly established Supreme Court law.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal

-16-

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." Id., at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" Id. at 405, quoting Turner v. State of Louisiana, 379 U.S. 466, 472-73 (1965).

Here, in rejecting Petitioner's claim, the Michigan Court of Appeals noted:

> The circumstances raised by defendant do not establish a Confrontation Clause violation. The prosecution's case was based on the testimony of the other participants to defendant's transactions, the testimony of the officers who investigated the case, and the paper trail of documentary evidence. Two representatives of Russ Milne Ford, a victim of defendant's fraudulent scheme, also testified at trial. Defendant had the opportunity to confront all witnesses who testified at trial, and defendant does not identify any testimonial statement by a non-testifying witnesses that was presented at trial. Defendant has failed to establish a Confrontation Clause violation and, accordingly, has not shown plain error.

Childress, No. 299592, at *8.

This decision constituted a reasonable application of clearly established Supreme Court law. Petitioner does not allege that his cross examination of any of the prosecution witnesses was limited or that any testimonial hearsay evidence was admitted at trial. There is no basis in Supreme Court law for requiring the prosecutor to present a "complaining witness" for Petitioner to cross examine. This claim is without merit.

-17-

**E.  Suppression of Exculpatory Evidence**

Petitioner's fifth habeas claim asserts that the prosecutor withheld a plea agreement that it made with Gilmore. He also argues that the prosecutor failed to disclose the criminal history of "Terence Jones" whose existence was never established at trial.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. See Brady v. Maryland, 373 U.S. 83 (1963). "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a Brady claim, the petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. See Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000); Luton v. Grandison, 44 F.3d 626, 628-29 (8th Cir. 1994). The petitioner bears the burden of establishing each of these three elements. See Carter, 218 F.3d at 601. Further, although Brady requires disclosure of exculpatory evidence, it is well established, that "Brady . . . does not require the government to create exculpatory material  that does not exist." United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980); see also, Richards v. Solem, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

The Michigan Court of Appeals rejected this claim as follows:

Defendant argues that the prosecutor violated his duty under Brady v.

-18-

Maryland, 373 U.S. 83, 87 (1963), to disclose exculpatory evidence. Defendant's failure to raise this issue in the trial court limits our review to plain error affecting defendant's substantial rights. Kowalski, 489 Mich. at 505-506.

A defendant has a constitutional due process right to the production of exculpatory evidence in the possession of the prosecution regardless of whether the defendant requests the evidence. Brady, 373 U.S. at 87; People v. Schumacher, 276 Mich.App. 165, 176 (2007). To establish a Brady violation, a defendant must prove "(1) that the state possessed evidence favorable to the defendant, (2) that the defendant did not possess the evidence and could not have obtained it with the exercise of reasonable diligence, (3) that the prosecution suppressed the favorable evidence, and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." People v. Fox, 232 Mich.App. 541, 549 (1998). "Impeachment evidence as well as exculpatory evidence falls within the Brady rule because, if disclosed and used effectively, such evidence 'may make the difference between conviction and acquittal.'" People v. Lester, 232 Mich.App. 262, (1998), quoting United States v. Bagley, 473 U.S. 667, 676 (1985).

Defendant's claim is based on his assertion that the prosecution failed to disclose the existence of a plea agreement with Gilmore and failed to disclose Terence Jones's alleged criminal history. There is no record evidence that a plea agreement was made with Gilmore. Gilmore was questioned on this subject at trial and denied the existence of any agreement. Defendant has not presented any contrary evidence indicating that an agreement actually exists. Similarly, there is no evidence that Jones, even if he existed, had a criminal history. Moreover, Jones was not a witness at trial, so any criminal history would not have been relevant for impeachment. On this record, there is no basis for finding a Brady violation. Accordingly, defendant has not established a plain error.

Childress, No. 299592, at *9.

This constituted a reasonable application of the established constitutional standard. There is no basis in the record for concluding that Gilmore received a plea deal in exchange for her testimony. Therefore, Petitioner has not established that the prosecutor suppressed any plea deal. With respect to Jones, the same thing holds true. Petitioner has not even demonstrated that such a person exists, let alone that he has a criminal history

that could have been used at trial.  This claim is without merit.

**F. Waiver of the Right to Counsel**

Petitioner's sixth claim asserts that the trial court erred when it allowed him to proceed at trial both pro se and with the assistance of counsel, in a so-called "hybrid representation" arrangement, without first obtaining a waiver of the right to counsel. The Court finds that the claim is without merit only because it cannot be supported by clearly established Supreme Court law.

The trial record does not indicate when the decision was made to allow Petitioner to proceed with hybrid representation. On the morning of the first day of trial, the trial court stated in response to Petitioner's objections regarding his counsel's preparedness: "As you and I have discussed, you're not really a supporting actor anyway. Your light needs to shine and you're going to take an active role, you're as prepared as anybody I've had in here." T 4/20/10, p. 7. Pretrial proceedings were held on January 21 and 25, 2010, and February 25, 2010, but no transcripts of those proceedings were made. In any event, the parties agreed that counsel was acting as more than stand-by counsel, and that Petitioner was not warned about the dangers of self-representation. The record is also clear that Petitioner took an active role in his own defense, including giving the opening statement, making motions and objections, and questioning witnesses.

A criminal defendant has a right to appear pro se or by counsel,  a right protected by the Sixth Amendment to the United States Constitution. Faretta v. California, 422 U.S. 806, 807, 832 (1975). If a defendant elects to represent himself, he must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " Faretta, at 835.

There is no right to "hybrid" representation that would result in simultaneous or alternating self-representation and representation by counsel. United States v. Mosely, 810 F.2d 93, 97 (6th Cir. 1987).

Nevertheless, while a defendant does not have a constitutional right to hybrid representation, a trial court has discretion to permit it. McKaskle v. Wiggins, 465 U.S. 168, 183 (1984). See also United States v. Mosely, 810 F.2d 93, 97-98 (6th Cir. 1987). In McKaskle, the Court held that the defendant's right to self-representation was not violated where the defendant vehemently objected to standby counsel's involvement prior to and at the beginning of trial, but subsequently agreed to or acquiesced in hybrid representation.

When a court does allow hybrid representation, there is a debate among authorities whether the defendant must be warned of the dangers and disadvantages of self-representation.

Some courts have been clear that a defendant's Sixth Amendment right to counsel is affected, and therefore must be validly waived, whenever the defendant undertakes any of the "core functions of counsel." See United States v. Davis, 269 F.3d 514, 519-20 (5th Cir.2001) ( "Hybrid or no, the representation sought by [the defendant] entailed a waiver of his Sixth Amendment right to counsel that required the safeguards specified in Faretta"); United States v. Turnbull, 888 F.2d 636, 638 (9th Cir.1989) ("If the defendant assumes any of the 'core functions' of the lawyer, however, the hybrid scheme is only acceptable if the defendant has voluntarily waived counsel."; See also 3 Wayne R. LaFave et al., Criminal Procedure §§ 11.5(g) (1999) ("Of course, since hybrid representation is in part pro se representation, allowing it without a proper Faretta inquiry can create constitutional difficulties."); Hill v. Commonwealth, 125 S.W.3d 221 (Ky.2004) (failure to hold Faretta

-21-

hearing, to give <u>Faretta</u> warnings, or to make a finding that defendant's limited waiver of counsel, to allow hybrid representation, was knowing, intelligent, and voluntary resulted in a structural error, requiring automatic reversal of defendant's conviction); <u>State v. Martin</u>, 103 Ohio St.3d 385, 816 N.E.2d 227 (2004) (hybrid representation requires a waiver of the assistance of counsel, as one of the difficulties of hybrid representation is that it cannot be determined until after the trial whether the defendant actually received the representation that would not require a full waiver); <u>Parren v. State</u>, 309 Md. 260, 523 A.2d 597 (1987) (since there is no clear boundary line between hybrid representation and self-representation assisted by standby counsel, and since hybrid representation is not constitutionally recognized, trial court must conduct waiver-of-counsel inquiry as prescribed by state rule for pro se proceedings).

Other courts, reasoning from the absence of a Sixth Amendment right to hybrid representation, have held that no waiver is required when the court grants a request for some slim forms of hybrid representation. See <u>United States v. Leggett</u>, 81 F.3d 220, 223 (D.C. Cir.1996) (holding that granting defendant's request to have defense counsel to ask some questions suggested by the defendant, against the advice of counsel, and later personally to ask a few questions of three prosecution witnesses after defense counsel's examination did not require a waiver of his Sixth Amendment right to counsel); <u>Banks v. Horn</u>, 271 F.3d 527, 539 (3d Cir.2001) (holding that insistence on testifying and having certain exhibits admitted during his testimony, against advice of counsel, at most constituted hybrid representation, and that the failure to obtain a waiver was not contrary to clearly established precedent of the United States Supreme Court, although perhaps was against the Sixth Amendment); <u>People v. Jones</u>, 53 Cal.3d 1115, 282 Cal.Rptr. 465, 811

P.2d 757 (1991) (as there are only two types of representation, self-representation and professional representation, hybrid representation must be deemed a form of professional representation, with counsel retaining "complete control over the extent and nature of the defendant's participation and all tactical and procedural decisions"; <u>Faretta</u>-type warnings therefore are not required because "the defense counsel retains control over the case" even where defendant is allowed to "actively participate"); <u>State v. Hunter</u>, 840 S.W.2d 850 (Mo.1992) (written waiver requirement does not apply to cases with hybrid counsel).

In <u>Wilson v. Hurt</u>, 29 F. App'x 324, 328 (6th Cir. 2002), the Sixth Circuit agreed with the former line of cases and found that "a trial court must obtain a waiver of the defendant's Sixth Amendment right to have counsel conduct the entire trial before it permits so-called hybrid representation to proceed." Nevertheless, because that case was governed by the AEDPA, the Court denied relief, finding "we also cannot find that such a denunciation is required by the 'clearly established Federal law, as determined by the Supreme Court of the United States.' 28 U.S.C. § 2254(d)(1)"). <u>Id.</u>

Here, the Michigan Court of Appeals agreed with the later line of cases, and it found that because Petitioner was proceeding with hybrid representation, no <u>Faretta</u> warnings were required. If this case were before the Court on direct review, it might be bound under <u>Wilson</u> to find that the absence of warnings violated <u>Faretta</u>. But this case is governed by the AEDPA, and because the United States Supreme Court has not clearly held that <u>Faretta</u> warnings are required in cases of hybrid representation, Petitioner has failed to demonstrate entitlement to relief based on this claim.

**G.  Jail Credit**

Petitioner's next claim asserts that the sentencing court erred when it failed to award

-23-

him credit for time served in jail between October 14, 2008, and the date of his sentencing.

Petitioner's claim with respect to jail credit is a matter of state law not cognizable on federal habeas review. See Howard v. White, 76 Fed. Appx. 52, 53 (6th Cir. 2003) ("[a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only"); Travis v. Lockhart, 925 F.2d 1095, 1097 (8th Cir. 1991) ("[b]ecause application of presentence jail time to a subsequent sentence is legislative grace and not a constitutional guarantee, the interpretation of state crediting statutes is a matter of state concern and not a proper function of a federal court under its habeas corpus jurisdiction") (internal quotation marks, citations and brackets omitted). Accordingly, Petitioner's claim with respect to the trial judge's calculation of credit for time served is not cognizable on federal habeas review.

## H.  Sufficiency of the Evidence

Petitioner asserts in his final two claims that insufficient evidence was presented at trial to sustain his conviction for larceny by false pretenses. Specifically, Petitioner challenges the sufficiency of the evidence offered to show that he was involved in the fraudulent transactions when most parts of the transactions were performed by Gilmore, and that there was no evidence offered to show that he intended to defraud the auto dealership. Respondent asserts that the Michigan Court of Appeals decision rejecting this claim on the merits was not objectively unreasonable.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record

-24-

evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S.Ct. 2060, 2065 (2012).

The Michigan Court of Appeals rejected Petitioner's claim as follows:

Defendant next argues, both through appellate counsel and in his Standard 4 brief, that the evidence was insufficient to support his conviction. This Court reviews a challenge to the sufficiency of the evidence de novo. People v. Kanaan, 278 Mich.App. 594, 618 (2008). To determine whether the evidence presented at a bench trial was sufficient to support the defendant's conviction, this Court views the evidence in a light most favorable to the prosecution to "determine whether a rational trier of fact could find that the

essential elements of the crime were proven beyond a reasonable doubt." Id. The elements of the crime can be proved by circumstantial evidence and reasonable inferences that can be drawn from such evidence. Id. at 619.

> The elements of larceny by false pretenses are as follows:
>
> (1) the defendant must have used a pretense or made a false statement relating to either past or then existing facts and circumstances, (2) at the time the pretense was used the defendant must have known it to be false, (3) at the time the pretense was used the defendant must have intended to defraud someone, (4) the accuser must have relied on the false pretense made by the defendant, (5) because of this reliance that person must have suffered the loss of some money or other valuable thing, and (6) the property obtained by the defendant must have had a fair market value of over . . . [$20,000, but less than $50,000] at the time of the crime.

People v. Lueth, 253 Mich.App. 670, 680-681 (2002).

In this case, the prosecutor presented evidence of defendant's involvement in the purchase or lease of several vehicles through his girlfriend, Tomeka Gilmore. Although Gilmore was listed as the named party to the transactions in the paperwork, the evidence indicated that it was defendant who initiated all contact and handled all of the negotiations for the transactions. The evidence showed that defendant was involved in the transaction in which a Land Rover vehicle was purchased in Gilmore's name as part of a financed transaction in which Capital One was listed as a secured creditor on the certificate of title, which was given to defendant. A few weeks later, a false certificate of title to the Land Rover was obtained that omitted Capital One's security interest in the vehicle. The evidence established that the false certificate of title was obtained by someone who submitted forged documents to the Secretary of State indicating that they had been authorized to act on behalf of Gilmore and falsely certifying the satisfaction of the Capital One debt and the release of Capital One's lien. The evidence further showed that defendant used the false certificate of title to negotiate a trade-in of the Land Rover in exchange for a prepaid lease of a Ford Fusion and a cash payment of approximately $20,000. The auto dealership relied on the false certificate by providing the Ford Fusion and cash payment under the belief that it was receiving the Land Rover free of any security interest.

Defendant argues that there was insufficient evidence that he was involved in the transactions, particularly in obtaining the false certificate of title. He emphasizes that Gilmore was the titled owner of the Land Rover, the titled owner of the Fusion, and the debtor to Capital One. Defendant also

-26-

maintains that the certificate of title was valid, and that there was no evidence that he had no knowledge of, or responsibility for, the omission of the Capital One lien. We disagree with each of these claims. The prosecutor presented ample evidence that defendant was the person who initiated and handled all of the transactions culminating in the Land Rover trade-in. Gilmore testified that defendant asked her to purchase each of the vehicles for him for his business, and she agreed to do so because he told her that he could not do so personally because "he had stuff in his name already." According to Gilmore, defendant conducted all of the negotiations for the purchase of the Land Rover and the other vehicles, he filled out the credit applications on her behalf, and he promised to be responsible for all payments and insurance. Gilmore stated that she signed the purchase agreements and credit applications at defendant's direction, without really knowing what was going on, because she trusted defendant and believed that he needed her help to acquire the vehicles for his leasing business. The auto dealership salesperson similarly testified that defendant initiated all contacts with the dealership, and that defendant conducted all of the negotiations, even when Gilmore was present.

Further, Gilmore testified that she gave the certificate of title for the Land Rover to defendant, but was subsequently contacted by Capital One about over-due payments. When she asked defendant about the payments, he told her that he was "handling it." Gilmore denied authorizing anyone to conduct business with the Secretary of State on her behalf and denied that the signature on the authorization form was her signature. She also denied falsely reporting the release of Capital One's lien to the Secretary of State and denied authorizing anyone to do so. Although there was no direct evidence that defendant was the person who obtained the false certificate of title, the evidence showed that defendant used the false certificate to negotiate the trade in of the Land Rover. Moreover, Gilmore's testimony established that defendant was aware that the Land Rover was purchased in a financed transaction and that he knew that Gilmore was not making the payments. Thus, the evidence allowed a rational trier of fact to find that defendant knew that the replacement certificate of title, which omitted the Capital One lien, was false, and that defendant knowingly used the false certificate to fraudulently obtain the Ford Fusion and the approximate $20,000 cash payment.

Defendant also argues that there was no evidence that he acted with intent to defraud Russ Milne Ford, because his only intent was to help Gilmore purchase vehicles. However, Gilmore's testimony was sufficient to establish that she had no personal interest in acquiring the Ford Fusion or any of the other vehicles she purchased or leased at defendant's instructions. Moreover, Gilmore testified that defendant received possession of both the Ford Fusion and the cash payment that was received for the trade-in

-27-

differential.

Accordingly, viewed in a light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction of larceny by false pretenses. Kanaan, 278 Mich.App. at 618.

Childress, No. 299592, *3-5.

The Michigan Court of Appeals recited the correct governing constitutional standard in discussing Petitioner's claim, and its conclusion that sufficient evidence was presented at trial to sustain Petitioner's convictions was reasonable. Viewed most favorably to the prosecution, the evidence showed beyond a reasonable doubt that Petitioner asked Gilmore to purchase the vehicles and, while the financing was in her name, Petitioner negotiated the purchases. Gilmore, unaware of Petitioner's unlawful intent, told Petitioner that payments were overdue, and Petitioner said he was "handling it." The evidence thus showed that Petitioner knew that the title for the vehicle was encumbered and so he knew the title certificate with no encumbrance could not be valid. Nevertheless, Petitioner used the falsified title to sell the vehicle to an unsuspecting third party. Contrary to Petitioner's assertion, the fact that there was not a single witness who observed every step of Petitioner's criminal scheme does not mean that the evidence was insufficient.

Accordingly, the state court decision did not "fall below the threshold of bare rationality" for the jury to conclude that the prosecutor presented sufficient evidence to support each element of the crime. Petitioner is therefore not entitled to habeas relief based on this claim.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may

issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. Id. at 336-37. The Court concludes that a certificate of appealability is warranted in this case with respect to Petitioner's  because reasonable jurists could debate the Court's assessment of Petitioner's sixth claim regarding the absence of warnings regarding self-representation when a defendant is operating with hybrid-representation. Petitioner is not entitled to a certificate of appealability with respect to any of his other claims under this standard. The Court will grant Petitioner permission to proceed on appeal in forma pauperis because an appeal could be taken in good faith with respect to his sixth claim.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is GRANTED with respect to Petitioner's sixth claim, but it is **DENIED** with respect to his other claims.

-29-

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis

is **GRANTED**.

Dated:  June 19, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 19, 2014, by electronic and/or ordinary mail and also on
Robert Childress #25851-039, Elkton Federal Correctional
Institution, Inmate Mail/Parcels, P.O. Box 10,
Lisbon, OH  44432.

s/Barbara Radke
Deputy Clerk